UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| ADRIAN LAMAR BRINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV423-039 |
| | ) |
| SGT. GILLISON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Adrian Lamar Brinson has filed this 42 U.S.C. § 1983 case, alleging that he was subjected to unconstitutional conditions at Coastal State Prison. *See* doc. 1 at 5. The Court granted him leave to proceed *in forma pauperis* and directed him to return several forms. *See* doc. 3. When he failed to timely comply, the Court recommended that his case be dismissed. *See* doc. 4. He did not object to that recommendation. *See generally* docket. Instead, he filed one of the forms and informed the Court that prison officials refused to provide him with the other form.

*See* doc. 5.  Given that Brinson has attempted to comply with the Court's Order, the prior Report and Recommendation is **VACATED**.[1]  Doc. 4.

The Court, therefore, proceeds to screen Brinson's Complaint.  *See* 28 U.S.C. § 1915A.  Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Amended Complaint are taken as true and construed in the light most favorable to the plaintiff.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).  Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).  As Brinson is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are

---

[1] The form that Brinson submitted is dated before the deadline for his compliance. *Compare* doc. 3 (requiring return of the forms before March 1, 2023), *with* doc. 5 at 1 (consent form dated February 26, 2023).  An accounting of the funds in his prisoner trust account, submitted along with the consent form, is dated March 14, 2023.  *See* doc. 5 at 3-5.  Under the "prison mailbox rule," Brinson might be entitled to the presumption that his consent form was filed timely.  *See Williams v. McNeil*, 557 F.3d 1287, 1290 n. 2 (11th Cir. 2009); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  The documents were not received by the Clerk until April 10, 2023. Given the ambiguous chronology, the Court will not recommend dismissal based on Brinson's failure to timely comply with the Court's Order.

Although Brinson has not submitted the "Prisoner Trust Fund Account Statement" form as required, *see* doc. 3 at 4, the Court will accept his representation that he has attempted to comply, *see* doc. 5 at 2.

liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Brinson's allegations are straightforward. He alleges that on November 16, 2022, Defendant Strickland "promised inmate[s] contraband to assault" him. Doc. 1 at 5. He states that three inmates, identified by their aliases, "BB, money hungry, extra," and three unidentified inmates attacked him while Strickland "watched and did not do a thing but make threats." *Id.* He alleges that another officer, Defendant Beard, supported Strickland's solicitation of the attack because of an ambiguous relationship "to a [B]ainbridge[, Georgia] teen that was murdered in [T]homasville[,] Ga. on July 2019." *Id.* Brinson alleges that Beard had previously "made threats," but does not specify what he threatened. *Id.* Finally, he alleges that, on November 22, 2022, Defendant Gillison "threatened that today was [his] last day breathing at Coastal State Prison," in the presence of the Deputy Warden of Care and Treatment and Defendant Gibbs. *Id.* He was then placed in segregated confinement, *i.e.* "the hole." *Id.* Finally, he alleges that two guards, Defendant Durant and "Big C," placed [him] in the hole with [his] attackers in the same room and promised them more money." *Id.*

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Moreover, the threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Id.* (internal quotation marks and citation omitted). Although the authority analyzing allegations of a guard's solicitation of other inmates to attack a plaintiff is limited, courts have applied *Farmer*'s deliberate indifference framework. *See Garcia v. Ojeda*, 2010 WL 5173147, at *5-*6 (E.D. Cal. Dec. 14, 2010) ("[A] rational trier of fact could conclude that it is not constitutionally acceptable for a correctional officer to ask inmates to attack a particular prisoner . . . .");

4

*see also Grant v. Heisol*, 2017 WL 1364664 at *5 (E.D. Cal. Apr. 14, 2017) (acknowledging that "Plaintiff's allegations that inmates were recruited at various points to threaten and intimidate Plaintiff could give rise to a claim" under *Farmer*'s deliberate indifference analysis); *Joseph v. Parciasepe*, 2015 WL 3869676, at *7 (E.D. Cal. June 23, 2015) ("Soliciting another inmate to assault plaintiff would not only make [defendant] aware of a substantial risk of harm to plaintiff's safety, it would mean he was actively attempting to create an excessive risk to plaintiff's safety . . . ."); *Lyons v. Beard*, 2011 WL 398273, at *12 (M.D. Pa. Jan. 10, 2011) (allegation of corrections officers' "actively soliciting inmates to assault" the plaintiff "plainly make out an Eighth Amendment violation").

Given that standard, the Court is satisfied that Brinson's claim against Strickland and Beard, arising from the November 16th attack, is sufficient for service. His allegation that he was placed in segregated confinement "with [his] attackers," and that Defendants Durant and "Big C" "promised them more money," doc. 1 at 5, is simply too vague to state a claim. Similarly, his vague allegation that he was "denied protective custody" and that Defendants Gillison and Gibbs paid for an unidentified

5

"2nd hit," *id.* at 6, fails to state a claim. His claims against Durant, "Big C," Gillison, and Gibbs should, therefore, be **DISMISSED**.

Brinson's allegations about verbal threats at the November 22nd meeting fail to state a claim. As this Court has explained, "verbal abuse, without more, does not state a claim under § 1983." *Reid v. Wilkes*, 2018 WL 1569860, at *4 (S.D. Ga. Mar. 6, 2018); *see also Hernandez v. Fla. Dept. of Corrs.*, 281 F. App'x 862, 866 (11th Cir. 2008) (". . . Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim."). "Though [the language Brinson alleges] was unprofessional, offensive, and, arguably, detestable, it is a distant cry from violating a federally protected right." *Lang v. Aguilar*, 2020 WL 9848839, at *1 (S.D. Ga. Dec. 22, 2020). Accordingly, any claim arising from alleged verbal threats or abuse should be **DISMISSED**.

Brinson has also named several supervisory officials at Coastal State Prison and the Georgia Department of Corrections as defendants, including Timothy Ward, the former Commissioner of the Department of Corrections, the unnamed current Commissioner of the Department of

Corrections, and the warden of Coastal State Prison, Aaron Pinerio.[2] *See* doc. 1 at 1, 4. It appears that Brinson asserts those defendants are liable in their supervisory capacities, as they do not appear at all in his factual allegations. *See id.* at 5. Section 1983 does not support such claims. *See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) ("Section 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*."). His claims against Ward, Pinerio, and the Commissioner of the Department of Corrections should, therefore, be **DISMISSED**.

Finally, Brinson's requested relief includes "that the [Georgia Bureau of Investigation] investigate [the] incident . . . ." Doc. 1 at 7. Private citizens are simply not permitted to initiate criminal actions in federal court. *See, e.g., Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially

---

[2] The Clerk, apparently because of difficulty reading Brinson's handwriting, has spelled Defendant Pinerio's surname "Pineno" on the docket. The Clerk is **DIRECTED** to update the docket to reflect the correct spelling of Defendant's surname.

7

cognizable interest in the prosecution or nonprosecution of another.")));  *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution.").  The Court is also without authority to order the United States Attorney, or indeed any other law enforcement officer, to initiate a prosecution.  *See, e.g., Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the criminal justice system.").  Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches.  *See id.* at 379-80 (quotes and cite omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not

there shall be a prosecution in a particular case."). Brinson's request for an investigation should, therefore, be **DISMISSED**.

In summary, Brinson's claim that Strickland and Beard violated his Eighth Amendment rights by soliciting the attack that occurred on November 22, 2022 is approved for service. His claim that Defendants Durant, "Big C," Gillison, and Gibbs violated his Eighth Amendment rights, if the Court has correctly construed the claim asserted against those defendants, should be **DISMISSED**. His claims arising from verbal threats made at the November 22, 2022 meeting should be **DISMISSED**. His claims against Defendants Ward, Pinerio, and the Commissioner of the Georgia Department of Corrections should be **DISMISSED**. Finally, his request to initiate a criminal investigation of the relevant incidents should be **DISMISSED**.[3]

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B)

---

[3] "[W]hen a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). To the extent that Brinson believes he can address the defects in his claims discussed above, he is free to submit an Amended Complaint within the time for his objections, discussed below. The Clerk is **DIRECTED** to send him a blank copy of Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)).

and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Finally, the Court must assess Brinson's filing fee. *See* 28 U.S.C. § 1915(b). Brinson's failure or inability to return the Prisoner Trust Fund Account Statement form precludes the Court from determining the proper initial partial filing fee *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," based upon average deposits to

or balance in a prisoner's account, under a specific 20 percent formula). He, therefore, does not owe an initial partial filing fee. His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order. [4]

Since the Court approves for service Brinson's Eighth Amendment claim against Strickland and Beard, a copy of Plaintiff's Complaint, doc. 1, and a copy of this Order and Report and Recommendation shall be served upon Defendants Strickland and Beard by the United States

---

[4] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

Marshal without prepayment of cost. The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff. The Court also provides the following instructions to the parties that will apply to the remainder of this action.

### INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local R. 4.5. A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d). Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral

examination. Fed. R. Civ. P. 30(a)(2). Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer. Local R. 26.1. Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness in order and word-for-word during the deposition. Fed. R. Civ. P. 30(c). Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## INSTRUCTIONS TO PLAINTIFF

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action. Local R. 11.1. Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney). Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37. The discovery period in this case will expire 140 days after the filing of the last answer. Local R. 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Id. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then

only to the extent necessary; and when needed for use at trial. Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant. Interrogatories are not to contain more than 25 questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per

page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for failure to prosecute. Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant. Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to

attend any status or pretrial conference which may be scheduled by the Court.

### **ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service. Failure to respond shall indicate that there is no opposition to a motion. Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion. Local R. 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. If a Defendant files a motion

for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be met by reliance on the conclusory allegations contained within the complaint. If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts. If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 14th day of April, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA